UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

HOWARD GRADY,

        Petitioner,

  v.                              Case No. 18-cv-1453-pp

SARAH COOPER,[1]

        Respondent.

**ORDER GRANTING RESPONDENT'S MOTION TO DISMISS (DKT. NO. 16), DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY AND DISMISSING CASE**

On September 17, 2018, the petitioner, an inmate at Oshkosh Correctional Institution who is representing himself, filed a petition for writ of *habeas corpus* under 28 U.S.C. §2254, challenging his July 16, 2015 conviction in Milwaukee County Circuit Court for aggravated battery. Dkt. No. 1 at 8-9; State v. Grady, Milwaukee County Case No. 14CF003988 (available at https://wcca.wicourts.gov). On September 25, 2019, the court screened the petition, allowed the petitioner to proceed on both of his claims, and ordered the respondent to answer or otherwise respond. Dkt. No. 13. About six weeks later, the respondent filed a motion to dismiss the petition along with a brief in

---

[1] Under Rule 2 of the Rules Governing Habeas Cases, "[i]f the petitioner is currently in custody under a state-court judgment, the petition must name as respondent the state officer who has custody." The petitioner is an inmate at Oshkosh Correctional Institution; this order reflects Warden Sarah Cooper as the respondent.

Case 2:18-cv-01453-PP   Filed 01/06/21   Page 1 of 37   Document 21

support of the motion. Dkt. Nos. 16, 17. The petitioner has filed his opposition brief. Dkt. No. 18. Because the petitioner procedurally defaulted his claims, the court will dismiss the petition and the case.

## I.  Background

### A.  Underlying State Case

On May 15, 2014, the Ozaukee County District Attorney's Office charged the petitioner with burglary. State v. Grady, Case No. 14CF000125 (Ozaukee County Circuit Court) (available at https://wcca.wicourts.gov). The petitioner pled no contest. Id. On July 29, 2014, the court sentenced the petitioner to three years of probation and withheld a term of incarceration. Id.

About a month later, the Milwaukee County District Attorney's Office charged the petitioner with one count of aggravated battery under Wis. Stat. §940.19(6) and one count of substantial battery with intent to cause bodily harm under Wis. Stat. §940.19(2). State v. Grady, Case No. 14CF003988 (Milwaukee County Circuit Court) (available at https://wcca.wicourts.gov). In Wisconsin, substantial battery is a lesser included offense of aggravated battery. See, e.g., State v. Jackson, 372 Wis. 2d 458 n.6 (Wis. Ct. App. 2016). The state brought both charges as domestic abuse offenses with the use of a dangerous weapon. Dkt. No. 1-1 at 1. The criminal complaint alleged that the petitioner "hit his live-in girlfriend repeatedly with a hammer to the head after she refused to give him money to buy drugs." Id. As a result of the Milwaukee charges, the Ozaukee County Circuit Court issued a revocation order and warrant on November 12, 2014. State v. Grady, Case No. 14CF000125

2

(Ozaukee County Circuit Court) (available at https://wcca.wicourts.gov). The court adjourned the petitioner's revocation hearing until his Milwaukee County case concluded. Id.

In April of 2015, a Milwaukee jury found the petitioner guilty on both battery counts. State v. Grady, Case No. 14CF003988 (Milwaukee County Circuit Court) (available at https://wcca.wicourts.gov). In May, the Ozaukee County Circuit Court revoked the petitioner's probation and sentenced him to seven years and six months of initial confinement followed by five years of extended supervision on the burglary charge. State v. Grady, Case No. 14CF000125 (Ozaukee County Circuit Court) (available eat https://wcca.wicourts.gov). The petitioner has a pending *habeas* case before this court challenging the Ozaukee County revocation proceedings. Grady v. Smith, Case No. 18-cv-615 (E.D. Wis.).[2]

On July 10, 2015, the petitioner returned to Milwaukee County Circuit Court for sentencing on his battery convictions. State v. Grady, Case No. 14CF003988 (Milwaukee County Circuit Court) (available at https://wcca.wicourts.gov). The Wisconsin Statutes provide that "[u]pon prosecution for a crime, the actor may be convicted of either the crime charged or an included crime, but not both." Wis. Stat. 939.66. Wis. Stat. §939.66(2m)

---

[2] The respondent filed her response to the petition May 12, 2020. State v. Grady, Milwaukee County Circuit Court, Case No. 14CF003988 (Dkt. No. 20). The court received some documents from the petitioner on May 20, 2020, dkt. no. 21, but has not yet determined whether those documents constitute a brief in support of his petition.

clarifies that "[a]n included crime may be . . . [a] crime which is a less serious or equally serious type of battery than the one charged." Before the sentencing hearing began, the state moved to dismiss the substantial battery conviction because of concerns related to Wis. Stat. §939.66(2m). Dkt. No. 1-1 at 1. The circuit judge dismissed Count Two (the substantial battery count) and sentenced the petitioner to twelve years of initial confinement and three years of extended supervision on Count One (the aggravated battery count), to be served consecutively to any other sentence. State v. Grady, Case No. 14CF003988 (Milwaukee County Circuit Court) (available at https://wcca.wicourts.gov). The instant federal *habeas* petition challenges the judgment from the petitioner's Milwaukee County case.

    B.    State postconviction proceedings

        1.    *Postconviction motion in Milwaukee County Circuit Court*

On October 14, 2016, the petitioner filed a postconviction motion in Milwaukee County Circuit Court seeking a new trial, or alternatively, a sentence modification. Dkt. No. 1-1 at 1. The petitioner argued that the trial court failed to adequately instruct the jury on lesser included offenses, and that this failure resulted in verdicts that violated Wis. Stat. §939.66(2m). Id. at 2. The Milwaukee County Circuit Court explained the petitioner's argument as follows:

> The [petitioner] maintains that it is unknown whether the jury thought he was more guilty on count one or on count two, and that it is plain error which entitles him to a new trial because the jury was instructed to answer both verdicts. He does not cite any legal support for this proposition; he merely argues that this particular scenario is distinguished from the situation found in ***State v.***

**Hughes**, 248 Wis. 2d 133 (Ct. App. 2001), which is relied on by the State.

Id. The court then recounted the facts and holding in Hughes:

> In **State v. Hughes**, . . . the jury was instructed only to find the defendant guilty of possession with intent to deliver if the State met its burden, and if it didn't, it should consider the mere possession charge; but it was not to find the defendant guilty of more than one of the two offenses. The jury found the defendant guilty of both offenses. The defendant argued that the verdict was ambiguous and sought a new trial. The Court of Appeals held that the second guilty verdict was "mere surplusage and is precisely the type of harmless error that Wis. Stats. Rule 805.18(2) commands shall not be the basis for a reversal." **Hughes**, 248 Wis. 2d at 141. The court found that the verdicts were not ambiguous because the jury clearly found that the State proved beyond a reasonable doubt that the defendant not only possessed the cocaine but possessed it with intent to deliver it. It therefore concluded that the defendant was not deprived of any substantial rights.

Id. at 2-3. The court rejected the petitioner's attempts to distinguish Hughes, finding that "[t]he jury's verdict on count one unequivocally reflect[ed] that it found the State had proved its case against the defendant beyond a reasonable doubt as to the greater offense." Id. at 3. The court concluded that "[w]hether or not the jury was told it should only reach a verdict on count two if it found the State did not meet its burden on count one is irrelevant to proof of the elements on count one." Id. The court dismissed the lesser included offense.

The petitioner also asked the circuit court for a new trial because he argued that the trial court failed to properly make a record of a note sent from the jury during deliberations. Id. The court found it "undisputed that the jury sent out a note and that the note was not retained" and then recounted the relevant portion of the petitioner's sentencing hearing:

5

THE COURT: . . . The other outstanding issue that the State reminded the Court of was that we did have a question that I don't believe I put on the record. I shouldn't say a question. It was a note the jury sent. I am usually good about putting those on the record and usually we keep a copy of them. For whatever reason, I believe this jury disposed of it because it didn't come back with the file and the binder, and I did not unfortunately make a record of it. I remember what it was. I understand the State wrote it down. And this came during deliberations. What was the question?

[THE STATE:] That's right Judge. I wrote it down because it was unusual and at the time pretty worrisome to the State. I believe the exact quote from the jury's question was 'proof of burden explanation' question mark.

THE COURT: That seems to be correct to me. I remember it having to do with the burden of proof. I remember it being kind of an oddly-worded question. Does that sound accurate to you, Mr. Mathers?

[DEFENSE:] Yes.

THE COURT: All right. So I will make the record that that's what the jury asked. Then I recall just directing them to the jury instructions. I did not give them any other specific type of instruction in response, but I directed them to the burden of proof portion of the jury instructions, which was on Pages 6 and 7. My recollection is [sic] my answer to them was please review the burden of proof as instructed on Pages 6 and 7 of the jury instructions or something to that effect. Is that your recollection, Mr. Schindhelm?

[THE STATE:] Yes.

THE COURT: And is that is [sic] yours as well, Mr. Mathers?

[DEFENSE:] Yes.

Id. at 3-4. The court acknowledged the petitioner's argument that because Wis. Stat. §805.13(1) requires "all statements or comments by the judge to the jury to be on the record, a new trial must be ordered because whatever the judge told the jury in this instance was not placed on the record." Id. at 4. But the court found that a new trial was not warranted; it noted that the trial court

6

"made a record of what occurred after the fact . . . and, . . . there [was] not a reasonable probability that anything about the note or the court's response could have affected the jury's verdict." Id.

2.    *Direct appeal of conviction and postconviction order*

In September 2017, the petitioner appealed his conviction and the trial court's denial of postconviction relief to the Wisconsin Court of Appeals, raising the same arguments that he had raised in his postconviction motion: the jury improperly convicted him of both substantial battery and aggravated battery and the circuit court erred by failing to place the jury note into the record. Dkt. No. 17-2 at 1, 5, 8, 13-14, 23. The petitioner also argued in the alternative that the circuit court's sentence was unduly harsh and should be modified. Id. at 5-6, 18-19.

The petitioner again asserted that the battery verdicts were improper under Wis. Stat. §939.66. Id. at 8. The petitioner argued that under that statute, he could not be convicted on both the crime charged and the included crime. Id. at 9. At the same time, he cited state case law outlining the general principles of lesser included offenses in Wisconsin. Id. at 9-10 (citing State v. Fleming, 181 Wis. 2d 546 (Wis. Ct. App. 1993); State v. Lechner, 217 Wis. 2d 392 (1998); Randolph v. State, 83 Wis. 2d 630 (1978); State v. Muentner, 138 Wis. 2d 374 (1987)).

The petitioner stressed that the jury instructions contained "no instruction as to a lesser included offense," did not clarify the "dichotomy as to the two verdicts" and did not prohibit the jury from finding the petitioner guilty

7

of both counts. Id. at 10. He argued that the instructions "clearly contemplate[d] that it [was] completely acceptable for the jury to find the defendant guilty of both counts." Id. at 10-11. The petitioner faulted the trial court for eventually dismissing the lesser included offense when the jury "was never given a chance to consider an 'either-or' situation for the counts." Id. at 13.

Regarding the missing jury note, the petitioner asserted that Wis. Stat. §805.13(1) requires "all statements or comments by the judge to the jury or in their presence relating to the case" must be on the record after the trial is sworn. Id. at 13-16. While the petitioner's argument focused on Wis. Stat. §805.13, it also referenced constitutional rights generally. He cited State v. Burton, 112 Wis. 2d 560 (1983) for the proposition that (1) the "accused has a constitutional right to be present for a circuit court's communications with the jury during its deliberations," (2) "[c]ommunication between a judge and a jury, while the jury is deliberating, outside the courtroom and outside the presence of the defendant and defense counsel constitutes constitutional error" and (3) a "court must consider whether the constitutional error is harmless beyond a reasonable doubt." Id. at 16-17. He referred to the jury note issue as one of "statutory dictates, as well as constitutional magnitude." Id. at 17. He also cited State v. Koller, 248 Wis. 2d 259 (Ct. App. 2001), arguing that a trial court's communication with a deliberating jury in the absence of the defendant and defendant's counsel violates the defendant's constitutional right to be present at trial and to have counsel at every stage. Id.

8

Finally, the petitioner argued that his sentence was unduly harsh. Id. at 18-19. Conceding that "a prison sentence [was] appropriate in this case," he asserted that a fifteen-year sentence was not. Id. at 19. He argued that the "victim recovered fully within a short period of time[,] but the sentence given to [the petitioner] essentially assures he will die in prison." Id. He accused the court of acting on emotion "to hand out an unduly harsh and unconscionable sentence." Id.

On May 30, 2018, the Wisconsin Court of Appeals issued a *per curiam* decision affirming the conviction and the trial court's denial of postconviction relief. Dkt. No. 17-3. The court found that under State v. Cox, 300 Wis. 2d 236 (Wis. Ct. App. 2007), the decision to vacate the lesser conviction was a reasonable remedy "because a jury following the correct procedure would end its deliberations after finding guilt on the greater offense and never reach the lesser." Id. at 3. Regarding the jury note, the Court of Appeals found that "[b]ecause the circuit court addressed the error and remedied it, and the error was unknown to the jury and therefore did not contribute to the verdict, the error was harmless." Id. Finally, the Court of Appeals rejected the petitioner's claim that his sentence was unduly harsh, finding that given the petitioner's thirty-year criminal record and the fact that the petitioner could have killed the victim when hitting her repeatedly in the head and face with a hammer, twelve years of initial confinement was a "reasonable result given the circumstances." Id. at 4.

9

3. *Petition in the Wisconsin Supreme Court*

On July 16, 2018, the petitioner filed a petition in the Wisconsin Supreme Court asking for "review of a decision of the [Wisconsin Court of Appeals]." Dkt. No. 17-4. While the petitioner titled this filing "Petition for review," the phrase "PETITION FOR WRIT OF HABEAS CORPUS" appears in a footer on both pages. Id.

As he had in his pleadings to the Wisconsin Court of Appeals, the petitioner focused on the Wisconsin Statutes while generally referencing the federal constitution. He asked the Wisconsin Supreme Court to consider whether "[a] real and significant question of federal or state constitutional law [was] present," and whether the Wisconsin Court of Appeals' decision "is in conflict with controlling opinions of the United States Supreme Court … or other court of appeals decision[s]." Id. at 1.

The petitioner maintained that he was entitled to a new trial under Wis. Stats. §§939.66 and 805.13. Id. He also claimed that his appellate counsel, attorney Stephen Compton, performed ineffectively; he asserted that he had not received a decision from the court of appeals or the state public defender. Id. at 2. He asserted that "[u]nder DOC rules, no inmate can get a copy of [a] written decision." Id. (citing Wis. Stat. §809.23). According to the petitioner, state law required his counsel to file either a petition for review or no-merit petition in the Wisconsin Supreme Court. Id. (citing State v. Mosley, 102 Wis. 2d 636 (1981)). He said that counsel told him that he "had taken on to[o] many

case[s]" at that time, was suffering from medical problems and allowed the petitioner's deadlines to pass. Id.

Three days later, the Wisconsin Supreme Court ordered Attorney Compton to respond with explanations of "when he was appointed to represent [the petitioner], whether he continued to represent [the petitioner] or when his representation terminated, whether he communicated with [the petitioner] regarding the filing of a petition for review, and whether he was directed to or intended to file a petition for review on the petitioner's behalf but failed to do so within the [thirty] day time period." Dkt. No. 17-5 at 1-2.

Attorney Compton informed the Wisconsin Supreme Court that he had filed many petitions for review and would have been "happy to file the same on [the petitioner's] behalf." Dkt. No. 17-6 at 1. He claimed he had not heard from the petitioner and had closed his case. Id. Attorney Compton provided the Wisconsin Supreme Court with a copy of a letter dated June 4, 2018 from him to the petitioner, informing the petitioner of the decision of the Wisconsin Court of Appeals and outlining four options for the petitioner to move the case forward. Id. at 2. The four options included: (1) closing the case, (2) filing a petition for review in the Wisconsin Supreme court, (3) terminating Attorney Compton's representation and proceeding *pro se* or with other counsel of the petitioner's choosing or (4) bringing a motion for reconsideration with the Wisconsin Court of Appeals. Id. The attorney urged the petitioner to make his decision quickly "as we only have 30 days to file a Petition for Review." Id. The letter explained that Attorney Compton saw no merit to support a petition for

11

review but emphasized that if the petitioner wanted him to file one, he would "absolutely do so." Id. at 3. Attorney Compton closed by asking the petitioner to write to him or set up a phone call to advise the attorney of whether the petitioner wanted him to seek review. Id.

A week later, the Wisconsin Supreme Court construed the petitioner's July 16, 2018 filing as a petition for writ of *habeas corpus* and denied relief. Dkt. No. 17-7 at 2. The court recounted that

> . . . Attorney Compton explains and documents that by letter of June 4, 2018, he sent [the petitioner] a copy of the court of appeals' decision and asked him to choose whether to abandon efforts on the case, or have Attorney Compton file a petition for review, or terminate Attorney Compton and proceed pro se or with counsel of his choosing. In his June 4, 2018 letter to [the petitioner], Attorney Compton asked [the petitioner] to "make a decision quickly as we have only 30 days to file a Petition for Review," and to contact him with his decision. Attorney Compton informs us that [the petitioner] never responded to his June 4, 2018 letter. We note, too, that although [the petitioner] claimed in his July 16, 2018 filing that he had not received a copy of the court of appeals' decision, he included a page from that decision as an attachment to his filing.

Id. at 2. The court stated that it could not conclude that the petitioner was prejudicially deprived of adequate representation on appeal such that the court would allow the late filing of a petition for review through a *habeas* petition. Id. (citing State ex rel. Schmelzer v. Murphy, 201 Wis. 2d 246 (1996)).

About six weeks later, the petitioner filed with the Wisconsin Supreme Court a document titled "Reconsideration Petition for Review;" a week after that, the court construed that filing as a motion to reconsider its order denying the state *habeas* petition, which it denied. Dkt. No. 17-8.

12

C.    Federal *Habeas* Petition

The petitioner filed this federal *habeas* petition on September 17, 2018.

Dkt. No. 1. This court's September 25, 2019 screening order identified two

grounds for relief: (1) that the trial court violated Wis. Stat. §939.66(2m) when

it allowed the jury to render guilty verdicts on both battery counts; and (2) that

Wis. Stat. §805.13(1) mandates a new trial because the trial judge failed to

make a record of a note the jury sent to the judge during deliberations. Dkt.

No. 13 at 7-8. While the court noted that it appeared that the petitioner was

alleging violations of *state* law, not violations of the federal Constitution or

laws, and explained that a federal court could grant *habeas* relief only if the

state court's errors violated federal law, id. at 8-10, the court nonetheless

allowed the petitioner to proceed past the Rule 4 screening stage on both

grounds, id. at 10.

D.    Respondent's Motion to Dismiss (Dkt. No. 16)

On November 14, 2019, the respondent filed a motion to dismiss the

petition based on procedural default. Dkt. No. 16. The petitioner filed a fifteen-

page opposition brief accompanied by a table of authorities and exhibits. Dkt.

Nos. 18, 18-1, 18-2.

1.    *"Proper" exhaustion*

The respondent argues that the petitioner "did not properly exhaust his

remedies because he did not follow Wisconsin's established procedure for

petitioning the Wisconsin Supreme Court for review of his claims." Dkt. No. 17

at 4. She argues that a petitioner must fairly present a constitutional claim

13

through at least "one complete round of the state's established appellate review process" before presenting the claim to a federal *habeas* court. Id. at 5 (citing Hicks v. Hepp, 871 F.3d 513, 530 (7th Cir. 2017)). She asserts that under Wis. Stat. §808.10(1), "[a] defendant who wishes to seek review of a court of appeals decision in Wisconsin's highest court must file a petition for review within 30 days of the court of appeals decision." Id. at 6. The respondent alleges that the petitioner filed in the Wisconsin Supreme Court two weeks after that deadline. Id.

The respondent also concludes that "for [the petitioner] to have properly exhausted his claims in state court, he needed to file a proper petition for review in the Wisconsin Supreme Court under Wis. Stat. §809.62." Id. at 5 (citing Moore v. Casperson, 345 F.3d 474, 485-86 (7th Cir. 2003)). According to the respondent, the petitioner's July 16, 2018 filing in the Wisconsin Supreme Court "was not a petition for review at all." Id. at 6. She emphasizes that while the petitioner "captioned the document in one place as a petition for review, he also captioned it as a petition for writ of habeas corpus." Id. She asserts that the filing "did not meet the requirements for a petition for review set forth in Wis. Stat. §809.62(2)" because it contained "no table of contents, no explanation of how the case met the court's criteria for review, and no real argument stating the reasons for reversing the court of appeals' decision." Id. at 6-7. She notes that "[t]he Wisconsin Supreme Court treated the filing as a writ petition rather than an untimely petition for review." Id. at 7.

### 2. *Fair presentment*

Next, the respondent argued that "[e]ven if the court finds that [the petitioner] properly exhausted his claims," the court should dismiss the petition because the petitioner did not fairly present those claims to the Wisconsin courts "as constitutional issues." Id. at 7. She argues that to fairly present a claim in state court, the petitioner must have "alerted that court to the federal nature of the claim." Id. at 8 (citing Bolton v. Akpore, 730 F.3d 685, 695 (7th Cir. 2013); Wilson v. Briley, 243 F.3d 325, 327 (7th Cir. 2001)). The respondent asserts that of the three issues the petitioner presented to the Wisconsin Court of Appeals, two were based on specific Wisconsin statutes and the third related only to the alleged harshness of the sentence. Id. The respondent argues that the petitioner cited no constitutional provisions or federal cases and asserts that "to the extent his brief cited cases that concerned constitutional principles, it is clear that the intent was to show the 'magnitude' of the statutory issue rather than frame it as any sort of constitutional error." Id. at 9. The respondent contends that "[the petitioner's] filing in the Wisconsin Supreme Court . . . cited a total of three cases decided by Wisconsin courts, and its only reference to constitutional principles is in reciting the court's criteria for review." Id.

### E. Petitioner's Response to the Motion to Dismiss (Dkt. No. 18)

The petitioner stresses the merits of his petition; he contends that the issue relating to "Wisconsin statutes 939.66 lesser-included charges" involves a violation of his federal due process rights under the Fourteenth Amendment.

Dkt. No. 18 at 1. He asserts that "omitting elements of jury instruction" violated Fed. R. Crim. P. 31 and 43[3] and "Sixth Amendment Due Process." Id.

Regarding procedural default, the petitioner argues that the state courts have had their opportunity to hear his claims; he filed a direct appeal, a motion for postconviction relief, a petition for review in the Wisconsin Supreme Court and a motion for reconsideration in the Wisconsin Supreme Court. Id. at 2. The petitioner also asserts that he was "having problems with attorney Compton on filing direct appeal;" he claims that Attorney Compton "was obligated to file a petition for review" but did not, so the "petitioner motion the courts for review." Id. at 3. The petitioner alleges a "[s]ubstantial question about the previous lawyers general fitness as a lawyer," alleges ineffective assistance and claims that his attorney "made a single serious mistake that may have prejudice the petitioner, by not petitioning Wisconsin Supreme Court for review." Id.

The respondent elected not to reply. Dkt. No. 19.

## II. Analysis

### A. Exhaustion

The respondent first argues that the court must dismiss the petition because the petitioner failed to "properly exhaust." Dkt. No. 17 at 4. Under 28

---

[3] The Federal Rules of Criminal Procedure are the rules that govern how criminal cases are conducted in *federal* court. They do not apply in state court; Wisconsin courts have their own rules of criminal procedure. The Federal Rules of Criminal Procedure are not laws; even if a state court takes some action that does not comport with the Federal Rules of Criminal Procedure (rules which do not apply to the state court), that violation would be cognizable by a federal court in a *habeas* case only if the violation rose to the level of violation the federal Constitution or some federal statute.

16

U.S.C. §2254(b)(1)(A), a federal court cannot grant *habeas* relief unless the petitioner exhausts the available state court remedies. Generally, a court considers a claim exhausted if a petitioner presents it through one "complete round of the State's established appellate review process." Woodford v. Ngo, 548 U.S. 81, 92 (2006) (citation omitted); Hicks, 871 F.3d at 530. This includes presenting a claim to the state's highest court in a petition for discretionary review. Id.

State-court remedies are considered "exhausted" when they are no longer available, regardless of the reason for their unavailability. Ngo, 548 U.S. at 92-93. If

> state-court remedies are no longer available because the prisoner failed to comply with the deadline for seeking state-court review or for taking an appeal, those remedies are technically exhausted . . . but exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead, if the petitioner procedurally defaulted those claims, the prisoner generally is barred from asserting those claims in federal habeas proceeding.

Id. (citing Gray v. Netherland, 518 U.S. 152, 161 (1996); Coleman v. Thompson, 501 U.S. 722, 744-51 (1991)).

Under Wis. Stat. §808.10(1), a decision of the Wisconsin Court of Appeals is reviewable by the Wisconsin Supreme Court only upon a petition for review granted by the Wisconsin Supreme Court, and the petition must be filed in the Wisconsin Supreme Court within thirty days of the date of the decision of the Wisconsin Court of Appeals. The Wisconsin Court of Appeals affirmed the petitioner's conviction on May 30, 2018. At that point, the petitioner had an unexhausted and available state-court remedy.

17

The petitioner did not file anything in the Wisconsin Supreme Court until July 16, 2018—forty-nine days after the Wisconsin Court of Appeals affirmed his conviction and nineteen days beyond the deadline for filing a petition for review under Wis. Stat. §808.10(1). Once that deadline passed, seeking review in the Wisconsin Supreme Court no longer was a remedy available to the petitioner. Perhaps for this reason, the respondent repeatedly stresses that the petitioner has not "properly" exhausted his state court remedies. See, e.g., Dkt. No. 17 at 4, 5. As the United States Supreme Court explained in Ngo, however, at that point, this state-court remedy technically was exhausted because it was unavailable, "regardless of the reason for [its] unavailability." Ngo, 548 U.S. at 92-93. For this reason, the court must conclude that the petitioner has met the statutory requirement that he exhaust his state-court remedies before filing his federal *habeas* petition (even if that exhaustion was not, as the respondent urges, "proper" under state law).

B.    Procedural Default

Even if a petitioner meets the statutory requirement that he exhaust his remedies, however,

> "[a] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman* [*v. Thompson*], 501 U.S. [722], at 732 [(1991)]. [Courts] therefore require a prisoner to demonstrate cause for his state-court default of *any* federal claim, and prejudice therefrom, before the federal habeas court will consider the merits of that claim. *Id.*, at 750 . . . . The one exception to that rule . . . is the circumstance in which the habeas petitioner can demonstrate a sufficient probability that [the court's] failure to review his federal claim will result in a fundamental miscarriage of justice. *Ibid.*

18

Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

The petitioner did not give the Wisconsin Supreme Court the opportunity to consider his federal claims. First, he did not follow the correct procedure for presenting those claims to the Wisconsin Supreme Court. The petitioner insists in his reply brief that his July 16, 2018 filing in the Wisconsin Supreme Court was a petition for review.[4] Dkt. No. 18 at 2. If so, that petition was untimely under Wis. Stat. §808.10(1). Again, the petitioner did not file anything in the Wisconsin Supreme Court until July 16, 2018—forty-nine days after the Wisconsin Court of Appeals affirmed his conviction and nineteen days after the deadline for filing a petition for review under §808.10(1).

The petitioner asserts that the reason his petition for review was not timely filed was because Attorney Compton provided him with ineffective assistance of counsel. Dkt. No. 18 at 3. The record evidence does not support

---

[4] The Wisconsin Supreme Court construed the petitioner's July 16, 2018 filing as a *habeas* petition, not a petition for review. Under that scenario, the petitioner's claims also are procedurally barred. If the filing was a *habeas* petition, the petitioner did not present his claims through one complete round of Wisconsin's established appellate review process. Hicks, 871 F.3d at 530 (clarifying one complete round "includes . . . a petition for discretionary review"). Because it is now too late for the petitioner to return to the Wisconsin Supreme Court to petition for discretionary review, the petitioner's *habeas* claims would be procedurally barred. Bolton v. Akpore, 730 F.3d 685, 696 (7th Cir. 2013) (citing Perruquet v. Briley, 390 F.3d 505, 514 (7th Cir. 2004) ("Procedural default generally precludes a federal court from reaching the merits of a *habeas* claim when the claim was not presented to the state courts and it is clear that the state courts would now find the claim procedurally barred.").

this claim; Attorney Compton provided the Wisconsin Supreme Court with his June 4, 2018 letter to the petitioner in which he explained the petitioner's options and asked the petitioner to contact him. Attorney Compton advised the Supreme Court that the petitioner did not contact him and the petitioner has not denied that in his pleadings in this court. Rather, the petitioner appears to believe that Attorney Compton was obligated to file a petition for review whether the petitioner asked him to or not. That is not the case.

Even if there was evidence showing that Attorney Compton provided ineffective assistance of counsel, and that that ineffective assistance was what caused the petitioner's petition for review to be filed late, that ineffective assistance cannot be used to establish "cause" for procedural default until the petitioner has presented it "to the state courts as an independent claim." Murray v. Carrier, 477 U.S. 478, 489 (1986). In Wisconsin, a person asserting that his appellate counsel was ineffective must file with the Wisconsin Court of Appeals a petition under State v. Knight, 168 Wis.2d 509 (1992), giving the appellate court the opportunity to determine whether counsel was ineffective. The petitioner has not shown that the court of appeals has ruled on whether Attorney Compton was ineffective, so the petitioner's claim that Compton was ineffective cannot be used as "cause" for his failure to follow the Wisconsin Supreme Court's procedural rules.

Second, the petitioner did not give the Wisconsin courts the opportunity to consider his federal claims because he did not present the *federal* claims to the Wisconsin courts. "Inherent in the habeas petitioner's obligation to exhaust

20

his state court remedies before seeking relief in habeas corpus, is the duty to fairly present his federal claims to the state courts." King v. Pfister, 834 F.3d 808, 815-16 (7th Cir. 2016) (quoting Lewis v. Sternes, 390 F.2d 1019, 1025 (7th Cir. 2004)); see also O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999). "Fair presentment requires assertion of a federal claim through 'one complete round of state-court review,' which means that 'the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory.'" King, 834 F.3d at 815 (quoting Lewis, 390 F.3d at 1025-26).

"Fair presentment of an issue requires a petitioner to put forward both the operative facts and the controlling legal principles." Pole v. Randolph, 570 F.3d 922, 936 (7th Cir. 2009) (citing Sanders v. Cotton, 398 F.3d 572, 580 (7th Cir. 2005)). Fair presentment does not necessarily require that the petitioner explicitly present the federal claim; it requires that "the substance of a federal habeas corpus claim must first be presented to the state courts." Picard v. Connor, 404 U.S. 270, 278 (1971); White v. Peters, 990 F.2d 338, 341 (7th Cir. 1993) ("[A]lthough a habeas petitioner need not set forth constitutional chapter and verse to exhaust his state remedies, he must do more than simply set forth the underlying facts related to his federal constitutional claim.") (citing Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam)).

Where a petitioner has not fairly presented his federal claims, the federal court considers the claims procedurally defaulted and does not address their merits. Hicks, 871 F.3d at 531 (citing Lombardo v. United States, 860 F.3d

21

547, 555 (7th Cir. 2017)). Again, if a petitioner procedurally defaulted on a claim, a federal *habeas* court generally cannot review that claim. Ngo, 548 U.S. at 93 (citing Gray, 518 U.S. at 162 (1996); Coleman, 501 U.S. at 744-51 (1991)). A procedural default bars a federal court from granting *habeas* relief unless a petitioner demonstrates cause for the default and resulting prejudice, or that a miscarriage of justice would result if the court did not address his claim on the merits. Perruquet, 390 F.3d at 514.

Fair presentment requires a *habeas* court to "consider whether 'the state court was sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve that issue on a federal basis.'" Whatley v. Zatecky, 833 F.3d 762, 771 (7th Cir. 2016) (citing McDowell v. Lemke, 737 F.3d 476, 482 (7th Cir. 2013)). The Seventh Circuit has identified four factors for a court to consider in determining whether a petitioner sufficiently alerted the state courts to the federal constitutional nature of a claim: (1) whether the petitioner relied on federal cases that engage in a constitutional analysis; (2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; or (4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation. Id. (citing Smith v. Brown, 764 F.3d 790, 796 (7th Cir. 2014)). "All four factors need not be present to avoid default, and conversely, a single factor alone does not automatically avoid default." Id. (citing Wilson v. Briley, 243 F.3d 325, 327-28 (7th Cir. 2001)). "[O]rdinarily, a state prisoner does not 'fairly present' a

22

claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material . . . that does so." Baldwin v. Reese, 541 U.S. 27, 32 (2004).

The petitioner's brief to the Wisconsin Court of Appeals did not alert that court to the potential constitutional component of his claims. The brief did not rely on, or even cite, any federal cases or federal constitutional provisions. Dkt. No. 17-2. The brief primarily cited Wis. Stats. §§939.66 and 805.23 and Wisconsin caselaw discussing those statutes; the table of contents listed ten decisions issued by Wisconsin courts and three Wisconsin statutes. Id. at 2-3 (citing State v. Fleming, 181 Wis. 2d 546 (Ct. App. 1993); State v. Lechner, 217 Wis. 2d 392 (1998); Randolph v. State, 83 Wis. 2d 630 (1978); State v. Muentner, 138 Wis. 2d 374 (1987); State v. Burton, 112 Wis. 2d 560 (1983); State v. Koller, 248 Wis. 2d 259 (Ct. App. 2001); Bastian v. State, 54 Wis. 2d 240 (1972); State v. Crochiere, 273 Wis. 2d 57 (2004); State v. Stenklyft, 281 Wis. 2d 484 (2004); State v. Wuensch, 69 Wis. 2d 467 (1975)).

None of the cases that the petitioner cited would have alerted the Wisconsin Court of Appeals that the petitioner was raising constitutional issues. Fleming, Crocheire and Wuensch do not discuss the federal constitution or constitutional rights at all. Fleming discusses judicial estoppel and state evidentiary law. Fleming, 181 Wis. 2d at 556, 560, 563. The petitioner cited Fleming in support of the argument that "evidence at trial may suggest . . . that an instruction on a lesser included offense may be appropriate

23

and a defendant cannot assert error simply because a lesser included offense is allowed along with an accompanying jury instruction." Dkt. No. 17-2 at 9. Crochiere discusses Wisconsin's requirements for sentence modifications. Crochiere, 273 Wis. 2d at 62-74. The petitioner cited Crocheire for the proposition that Wisconsin courts have the power to modify a sentence. Dkt. No. 17-2 at 20. Further, the Wisconsin Supreme Court abrogated Crochiere in State v. Harbor, 333 Wis. 2d 53 (2011). "The sole issue" in Wuensch "is whether the trial court abused its discretion in reducing [a] sentence." Wuensch, 69 Wis. 2d at 468. The petitioner cited Wuensch in support of the argument that the Wisconsin Court of Appeals had the power to modify his sentence. Dkt. No. 17-2 at 20-21.

The petitioner cited some cases that involved constitutional concerns, but did not utilize them to illustrate or support any constitutional arguments of his own. Lechner addresses whether Wisconsin violated a defendant's constitutional rights to be free from double jeopardy when it sentenced that defendant for multiple crimes arising out of one instance of reckless driving and one victim. Lechner, 217 Wis. 2d at 396-97. The petitioner cited Lechner only for the proposition that "[Wis. Stat. §939.66] does not bar multiple convictions where the crimes are equally serious." Dkt. No. 17-2 at 9. Bastian rejected an argument that a defendant was "denied due process or prejudicial error committed because various proceedings in the case were conducted by different assistant district attorneys." Bastian, 54 Wis. 2d at 249. The petitioner cited Bastian to argue that a sentence of probation was more

24

appropriate than confinement under the ABA Standards adopted by the Wisconsin Supreme Court. Dkt. No. 17-2 at 19. Stenklyft touches on the constitutionality of Wis. Stat. §973.195, which governs sentence adjustments. Stenklyft, 281 Wis.2d at 522-528. As he did with Crochiere, the petitioner cited Stenklyft in support of his argument that his sentence was unduly harsh and should be modified. Dkt. No. 17-2 at 20.

The Randolph case—superseded by statute in 1986—primarily discusses Wis. Stat. §939.66 and lesser included offenses under Wisconsin law in the context of jury instructions. Randolph, 83 Wis. 2d at 642-647. Aside from a single mention of procedural due process, it engaged in no constitutional analysis. Id. at 644. The petitioner did not cite Randolph in a constitutional context, but to discuss lesser included offenses under Wisconsin law. Dkt. No. 17-2 at 9. Muentner does not involve constitutional analysis and does not mention constitutional rights aside from a single mention of a "constitutionally fair trial;" that case considered whether a defendant had waived a statute of limitations defense to a lesser included offense. Muentner, 138 Wis. 2d at 388. The petitioner cited Muentner in support of the assertion that "the courts have also consistently looked to proper instruction of the jury as a prerequisite in sending a jury back to consider a lesser included offense." Dkt. No. 17-2 at 9-10.

The last few cases the petitioner cited gave the Court of Appeals no reason to think that he was raising federal constitutional claims. Burton, 112 Wis. 2d 560, discusses constitutional rights in the context of *ex parte*

communications between a trial judge and the jury. The petitioner cited Burton for the proposition that "[the] accused has a constitutional right to be present for a circuit court's communications with the jury during its deliberations." Dkt. No. 17-2 at 16. The Wisconsin Supreme Court overruled Burton in State v. Alexander, 349 Wis. 2d 327 (2013)—well before the petitioner filed his brief in the Wisconsin Court of Appeals in November of 2017. In Alexander, the Wisconsin Supreme Court determined that "[a]dopting a requirement that a defendant must *always* be present whenever a court speaks with members of the jury would . . . impose an unreasonable and unnecessary burden upon trial judges, who would be forced to ensure the presence of defendants at meetings where they had nothing to contribute to their own cause, and where their presence could in fact be highly counterproductive. Alexander, 349 Wis. 2d at 342.

Similarly, Koller discusses constitutional rights, including the standards applicable to and the substance of ineffective assistance of counsel claims, 248 Wis. 2d at 270-75, the right to be free from double jeopardy, id. at 275-82, and the constitutional right to be present at trial, id. at 293-96. As the petitioner argues, the Koller case states that communications between the trial court and a deliberating jury in the absence of the defendant and the defendant's counsel violate the defendant's constitutional right to be present at trial and to have counsel at every stage where he or she needs aid in dealing with legal problems. Id. at 293; Dkt. No. 17-2 at 17. Koller, however, relies on Burton for

that constitutional premise, and the Wisconsin Supreme Court overruled Burton in 2013. Koller, 248 Wis. 2d. at 293.

In sum, the petitioner's arguments to the Court of Appeals focused exclusively on whether the trial court had complied with Wis. Stats. §§939.66 and 805.13. Dkt. No. 17-2 at 5, 8, 13.

The petitioner's July 16, 2018 filing in the Wisconsin Supreme Court similarly focused solely on these statutes with the exception of his reference to the standard of review, in which he stated that a question of "federal or state constitutional law was present" and that "the [Wisconsin Court of Appeals'] decision [was] in conflict with controlling opinions of the United States Supreme Court." Dkt. No. 17-4 at 1. He disputed "[h]ow the [Wisconsin Court of Appeals] decided the issues and affirm[ed] the convict[ion]s under [Hughes.] Id. He argued that his appellate counsel should have filed a no-merit petition or a petition for review under State v. Mosley, 102 Wis. 2d 636 (1981). Id. at 2.

Even the federal *habeas* petition in this case made no mention of federal constitutional claims. While the petitioner added several federal cases to his table of contents, dkt. no. 1 at 4, his statement of issues again focused solely on Wis. Stat. §§939.66(2) and 805.13(1), dkt. no. 1 at 6. Nowhere in the petition did the petitioner mention the Constitution. It was not until he filed his reply brief in this federal *habeas* case that the petitioner asserted that his claims involved the Sixth and Fourteenth Amendments. Neither the Wisconsin Court of Appeals nor the Wisconsin Supreme Court had the opportunity to consider whether the petitioner's case involved violations of the Sixth and

27

Fourteenth Amendments, because the petitioner never presented those courts with that question.

The petitioner could have tried to articulate his claims regarding the trial court's decision to dismiss the lesser included count post-verdict and the trial court's failure to address the jury note in the petitioner's presence in constitutional terms, such that the Wisconsin Supreme Court would have recognized them as being in the "mainstream of constitutional litigation." Whatley, 833 F.3d at 771. The petitioner did not do so; he framed his claims in the Wisconsin courts as claims regarding application of Wisconsin statutes. Dkt. No. 17-2. "A federal court cannot disagree with a state court's resolution of an issue of state law." Miller v. Zatecky, 820 F.3d 275, 277 (7th Cir. 2016) (citing Bradshaw v. Richey, 546 U.S. 74 (2005)). The petitioner did not fairly present the Wisconsin courts with his constitutional claims.

Because the petitioner procedurally defaulted on his constitutional claims, the court must dismiss the petition.

C. Final Thoughts

Because the petitioner has procedurally defaulted—he never gave the Wisconsin courts the opportunity to consider his constitutional claims—this court cannot rule on the merits of his petition. The court observes, however, that the petitioner asserted for the first time in his reply brief that the jury's verdicts convicting him of both battery offenses and the trial court's dismissal of the lesser-included offense somehow violated the Fourteenth Amendment's guarantee of due process. Dkt. No. 18 at 1. The court cannot determine what

28

that violation would be. The U.S. Supreme Court has issued several decisions instructing courts regarding when they must give jury instructions about lesser included offenses. See, e.g., Beck v. Alabama, 447 U.S. 625 (1980) (reversing sentence of death as unconstitutional when jury was not permitted to consider a verdict of a lesser included, noncapital offense); Hopper v. Evans, 456 U.S. 605 (1982) (due process requires lesser included offense instruction only if evidence supports such an instruction); Hopkins v. Reeves, 524 U.S. 88 (1998) (if there is no lesser included offense, a lesser included offense instruction detracts from the rationality of the process). But the petitioner has not argued that the jury instructions were not proper. The petitioner makes no mention of the Double Jeopardy Clause of the Fifth Amendment (applicable to the states through the Fourteenth Amendment), but even if he had, that clause prohibits multiple *punishments* for the same offense. See, e.g., Brown v. Ohio, 432 U.S. 161, 164-65 (1977). The petitioner was not punished twice because the state sought, and the court granted, dismissal of the lesser included offense. If the state court committed some constitutional violation, the court cannot immediately discern what it would be.

As for his claim regarding the jury note, the court can conceive of a constitutional argument that the petitioner might have made. The petitioner asserts that "a note drafted by the jury and given to the court was neither considered contemporaneously nor preserved by the court during trial." Dkt. No. 1 at 21. He stresses that he "was not present in court when the jury note was first brought to the attention of the court," and he "first became aware of

29

[it] during the sentencing hearing." Id. at 22-23. The petitioner argues that because the trial judge failed to preserve the note or enter it into the record, and because the petitioner was not present when the court first addressed the note, the court violated his Sixth Amendment right to be present at his trial and his Due Process rights under the Fourteenth Amendment. Dkt. No. 18 at 10-11.

"[A] defendant has a sixth amendment right to confront witnesses or evidence against him." U.S. v. McCoy, 8 F.3d 495, 496 (7th Cir. 1993). That right is not implicated in all events of a trial. For example, a defendant has no Sixth Amendment right to be present at side-bar conferences, when "no witness or evidence against [a defendant] [is] presented." Id. (citing Verdin v. O'Leary, 972 F.2d 1467 (7th Cir. 1992)). "The Due Process Clause supplements [a defendant's Confrontation Clause right] by protecting the defendant's right to be present during some stages of the trial where the defendant's ability to confront a witness against him is not in question—*ex parte* communications between the judge and jury fall into this category." Moore v. Knight, 368 F.3d 936, 940 (7th Cir. 2004).

"[T]he mere occurrence," however, "of an *ex parte* conversation between a trial judge and a juror does not constitute a deprivation of any constitutional right." U.S. v. Gagnon, 470 U.S. 522 (1985) (citing Rushen v. Spain, 464 U.S. 114, 125-26 (1983)). "Such communications between the judge and jury will violate the defendant's right only when the defendant's presence, 'has a relation, reasonably substantial, to the fulness of his opportunity to defend

30

against the charge.'" Moore, 368 F.3d at 940 (quoting Gagnon, 470 U.S. at 526). A court will "look to see if the communications had a prejudicial effect on the defendant and rendered the trial 'fundamentally unfair.'" Id. (quoting Ellsworth v. Levenhagen, 248 F.3d 634, 640 (7th Cir. 2001)). The United States Supreme Court found an *ex parte* communication to result in harmless error, for example, when it "did not discuss any fact in controversy." Rushen, 464 U.S. at 121. The Seventh Circuit Court of Appeals "ha[s] noted that a 'brief procedural remark' by the judge to the jury, off the record, will not rise to the level of constitutional error." Moore, 368 F.3d at 941 (citing Ellsworth, 248 F.3d at 642).

In Verdin, the Seventh Circuit denied *habeas* relief when a petitioner claimed that an *ex parte* communication between the judge and jury violated the petitioner's Due Process rights. In the state case underlying Verdin, an Illinois jury found the petitioner guilty of murder and manslaughter. Verdin, 972 F.2d at 1471. The court instructed the jury that dual guilty verdicts on those charges were improper and asked the jury to deliberate again and decide on one verdict. Id. "While the jury was re-deliberating and the parties had left the courtroom, the jury passed a note to the trial judge, who answered it without consulting counsel and without entering the note or his response on the record." Id. The question from the jury regarded how to present the verdicts to the court, should they find the petitioner guilty of murder. Id.

On *habeas* review, "the district court . . . concluded that a communication between judge and jury outside of the presence of counsel does

31

not violate the Constitution unless it 'so infects the trial process as to make the trial as a whole fundamentally unfair.'" Id. at 1480. (citing Gagnon, 470 U.S. at 522. "The district court also relied upon [the Seventh Circuit's] subsequent conclusion that "[a] judge's failure to show jurors' notes to counsel and allow them to comment before responding violates Fed. R. Crim. P. 43(a), not the Constitution." Id. at 1481 (citing United States v. Widgery, 778 F.2d 325, 329 (7th Cir. 1985)). "[T]he district court concluded that the *ex parte* communication did not have sufficient prejudicial effect to rise to the level of a constitutional violation." Id. at 1481.

"Ten weeks later, . . . the district court reversed itself on this issue:" "[i]n light of the intervening decisions in *Falconer* [*v. Lane,* 905 F.2d 1129 (7th Cir. 1990)] and *Rose* [*v. Lane*, 910 F.2d 400 (7th Cir. 1990)], the court found that the judge-jury communication combined with the jury instructions to confuse the jury as to which verdict it should return if it found the elements of both counts to be satisfied." Id. It found that "the record show[ed] a likelihood of prejudice from the *ex parte* contact," and granted relief. Id.

On appeal, the Seventh Circuit noted that "[t]he district court was correct to rely upon . . . Gagnon and Widgery to handle the ex parte judge-jury communication." The court added that under Gagnon,

> a defendant has a due process right to be present at a proceeding "whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge. . . . [T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only."

32

Id. (quoting Gagnon, 470 U.S. at 526-27). The court held that, "[i]n Mr. Verdin's case, the jury question and the trial court's response did not implicate Sixth Amendment concerns; no witnesses or evidence were presented against him in his absence." Id. at 1481-82. "[I]f Mr. Verdin had a constitutional right to be present at the exchange," the court found, "it stemmed from his due process right to be present 'whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge . . . to the extent that a fair and just hearing would be thwarted by his absence.'" Id. at 1482 (citing Gagnon, 470 U.S. at 526). "Only a trial fundamentally unfair in light of the entire proceedings," the court continued, "violates the open-ended aspect of [this] constitutional protection. Id. (quoting Widgery, 778 F.2d at 330).

The court held that "[b]ecause it accept[ed] the Illinois Appellate Court's finding that the trial court's communication with the jury was a brief procedural remark that did not mislead the jury, [it] must conclude that fairness and justice were not thwarted by Mr. Verdin's absence at the exchange. Id. (citing Gagnon, 470 U.S. at 526). "Thus," the court found, "the district court was correct in its original assessment . . . [that] the ex parte communication did not have sufficient prejudicial effect to rise to the level of a due process violation." Id.

In the petitioner's case, the judge read a jury note regarding the burden of proof in the petitioner's absence. It did not render the trial fundamentally unfair when, outside of the presence of the petitioner, the judge considered a

33

question from the jury about the burden of proof and responded by simply referring the jury to the jury instructions. This exchange involved no evidence against the petitioner, and it is hard to fathom how the the Sixth Amendment could have been implicated. Verdin, 972 F.2d at 1481-82. The court is hard-pressed to see how the petitioner's presence at the exchange could have had any reasonably substantial relation to the fulness of his opportunity to defend against his battery charges. Gagnon, 470 U.S. at 526. This is especially true if the defendant's lawyer was present during the exchange.

The court ultimately corrected its error and made a record of the note at the petitioner's sentencing hearing. Dkt. No. 1-1 at 3-4. All parties, including defense counsel, recalled that the note read, "proof of burden explanation?" Id. All parties recalled that the trial judge declined to answer the substance of the question, and instead directed the jury to the discussion of the burden of proof as it was stated in the jury instructions. Id. The petitioner has cited no federal cases finding a constitutional violation from a trial court's failure to make a contemporaneous record of the jury's question about the burden of proof.

In Kelley v. Parke, 96 F.3d 1450 (Table) (7th Cir. 1996), the Seventh Circuit rejected a claim similar to the petitioner's. In Parke, the petitioner argued that the state trial record was inadequate because the trial judge did not make a contemporaneous record of his comments to the jury regarding sequestration. Id. at *1. The Seventh Circuit held that

> [b]ecause it is clear that a judge's comments to a jury regarding sequestration does not violate any established constitutional principle, there is no need to establish word for word what the judge said to the jury in the instant case. In addition, even though no

34

contemporaneous record was made of the judge's comments, the state court record of the post-conviction hearing, at which both Kelley and his trial attorney testified, provides a satisfactory account of the statements in question. Moreover, in his appeal to this court, Kelley has not put forth a different version of the events than is reflected in the transcript of the hearing. Therefore, because he does not allege facts that if true would entitle him to relief, "a hearing at which [Kelley] may prove those facts [would be] useless."

Id. at 3 (quoting Matta-Ballesteros v. Henan, 896 F.2d 255, 258 (7th Cir.), cert. denied, 498 U.S. 878 (1990)). The court denied *habeas* relief. Id.

As mentioned above, the Wisconsin Supreme Court confronted a similar issue in State v. Alexander, 349 Wis. 2d 327 (2013). In that case, the court explained that

> [w]e acknowledge that some of the language in our case law has been in tension with the concept that a defendant does not have an absolute constitutional right to attend every in-chambers conference. For example, in State v. Burton, 112 Wis. 2d 560 . . . [w]e held that "communication between a judge and a jury, while the jury is deliberating, outside the courtroom and outside the presence of the defendant and defense counsel constitutes constitutional error, if the defendant has not waived the constitutional right to be present.
>
> This holding, however, was in direct contradiction to our decision just three years earlier in May v. State, 97 Wis. 2d 175 (1980). In that case, during deliberations the jury asked the circuit court the following question related to the charged offense of delivering a controlled substance as a party to a crime: "'By withdrawing from a conspiracy has a person removed themselves (sic) from aiding and abetting the commission of a crime?'" The court answered the question "no," without informing the defendant or his attorney. Two issues related to this incident were raised on appeal: (1) did the circuit court err in answering the question in the absence of counsel?; and (2) did the circuit court err in answering the question in the absence of the defendant?
>
> As to the first question, we held that because "there was no waiver in this case, counsel should have been given the opportunity to confer with the court about the appropriate response to be given to the jury's question. It was error for the trial court to answer the

35

question without notifying counsel." On the second question, however, we held that "[a] fair and just trial was not thwarted by the court's answering that question outside the defendant's presence. The question posed by the jury dealt with a question of law and the trial court answered it correctly." Additionally, "[n]othing transpired which was prejudicial or harmful to the defendant's cause, especially in view of the fact that the trial court subsequently reread to the jury the instructions concerning party to a crime." All that due process and Wis. Stat. §971.04 required was that the defendant's attorney be present.

Alexander, 349 Wis. 2d at 340-41 (internal citations omitted). The court held that "May [was] more soundly reasoned and more consistent with the precedent of [the Wisconsin Supreme Court] and that of the U.S. Supreme Court" and overruled Burton. Id. at 341-42.

The court cannot rule on the merits of the petitioner's (newly identified) constitutional claims, because he never gave the state courts the opportunity to consider them. The court notes only that it has difficulty determining how the jury verdict and the court's subsequent action in dismissing the lesser included charge could have violated the Fourteenth Amendment, and it doubts the petitioner could have prevailed on a Sixth or Fourteenth Amendment claim regarding the court's treatment of the jury note.

The court will dismiss the petition.

## III. Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the court must consider whether to issue a certificate of appealability. See also 28 U.S.C. §2253(c)(1). This requirement exists because "[a] state prisoner whose petition for a writ of *habeas corpus* is denied by a federal district court does not enjoy an absolute right to appeal." Buck v. Davis, ___ U.S. ___, 137 S. Ct. 759, 773

36

(2017). This court may issue a certificate of appealability only if the petitioner makes a substantial showing of the denial of a constitutional right. <u>See</u> 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Peterson v. Douma</u>, 751 F.3d 524, 528 (7th Cir. 2014) (citing <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)). The court declines to issue a certificate of appealability because no reasonable jurist could debate the petitioner's procedural default.

## IV. Conclusion

The court **GRANTS** the respondent's motion to dismiss petition for writ of *habeas corpus*. Dkt. No. 16.

The court **ORDERS** that this case is **DISMISSED**. The clerk will enter judgment accordingly.

The court **DECLINES** to issue a certificate of appealability.

Dated in Milwaukee, Wisconsin this 6th day of January, 2021.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**

37